## BELL v. RADABAUGH et al.

No. 26565. Nov. 4, 1936.

Springer & Hervey, for plaintiff in error.

John W. Whipple and Wilcox & Swank, for defendants in error.

PER CURIAM. This was an action instituted in the district court of Payne county by the plaintiff in error, as plaintiff, against the defendants in error, as defendants, and the parties will be referred to as they appeared in the lower court.

In the original petition filed in said cause by the plaintiff, he sued upon two promissory notes for the principal amount of $125 each. suing on one note in the first count of his petition and on the other in the second count. Copies of the notes are attached to his petition as Exhibits "A" and "B." The notes in question bear the date of May 29, 1931, and by their terms are payable to the order of Toro Manufacturing Company, Minneapolis, Minn., the due date of one being November 29, 1931, and of the other March 1, 1932. The signature to each of the notes in question is as follows:

"Ripley Golf Club,

"By C. C. Radabaugh, Treasurer."

Certain of the defendants demurred to this petition, which demurrer was sustained by the court, and, thereafter, the plaintiff filed in said cause his amended petition against the same defendants. In this amended petition he alleged that the defendants and all of them entered into a copartnership and organized and became members of the Ripley Golf Club located as Ripley, Okla., in Payne county. He then alleged that, on or about May 1. 1931, the defendants and each of them verbally ordered of the Toro Manufacturing Company, a corporation, a set of Toro Fairway Mowers to be used by and for and on behalf of the Ripley Golf Club, and that in ordering said property the defendant C. C. Radabaugh, and others of the defendants, at that time unknown to the plaintiff, were the agents and had authority for and on behalf of the other defendants to order said property, and that it was shipped by the Toro Manufacturing Company to the Ripley Golf Club and received and accepted by it; that the property was worth and of the value of $250, and that when said defendants received and accepted said property they and each of them became indebted to the Toro Manufacturing Company of Minneapolis, Minn., in the sum and amount of $250. He then alleged that the account for the purchase price of this property was by the Toro Manufacturing Company sold and transferred to D. B. Bell, the plaintiff, who became the owner and holder of such ac-

count; that no part of the same had been paid.

In count 2 of his amended petition the plaintiff adopted the pertinent parts of count 1 of his petition, and further alleged that the defendants and each of them were, at all of the times mentioned in the petition, the membership of the Ripley Golf Club, and that, on the 29th day of May, 1931, the defendants were indebted to the Toro Manufacturing Company in the sum of $125, in consideration of which they executed and delivered to it their promissory note for that amount, a copy of which is attached thereto, marked "Exhibit A"; that said note was signed "Ripley Golf Club, by C. C. Radabaugh, Treasurer," and at the time he signed such note he was acting for himself and as agent for the other defendants, and had full authority to so act and sign said note, and that the defendants and each of them became indebted upon said note to the Toro Manufacturing Company in the sum of $125. He then alleges the transfer of said note after the maturity thereof to himself and that he became the owner and holder thereof; that it was due and payable and he sought to recover the amount of the same from the defendants.

Count 3 of his amended petition is in all respects the same as count 2 and in which he merely declared upon the other note.

Thus it will be observed that in the first count of his petition he sought recovery against the defendants upon an account for merchandise sold to them, while in counts 2 and 3 he sought to recover from them on promissory notes given for the purchase price of the same property.

After various motions and demurrers were filed to the amended petition, answers were filed by the several defendants, and by which answers they put in issue the alleged partnership relation of the defendants and the alleged authority of the defendant C. C. Radabaugh to execute the notes in question on behalf of the defendants, and deny that they were indebted to the plaintiff in any manner, and put in issue all of the allegations of the plaintiff's petition.

Thus the burden was cast upon the plaintiff to establish the existence of a partnership between the defendants and the authority of the defendant C. C. Radabaugh to execute the notes in question on behalf of the said defendants.

Upon these issues the case went to trial before the court and a jury, and the plaintiff placed several of the defendants upon

the witness stand in an effort to establish the allegations of his petition In so doing, he encountered the difficulties usually experienced by one party to a lawsuit when he is compelled to go into the camp of his adversary for witnesses, and instead of the testimony elicited by the plaintiff from the witnesses so placed upon the stand by him sustaining the allegations of the plaintiff's petition, it wholly and completely disproved the same. It is not necessary to give a history of the testimony of these various witnesses. As illustrative, however, of the character of the testimony, reference may be had to the testimony of C. C. Radabaugh, the defendant who signed the notes in question, and who ordered the Fairway Mowers for the alleged purchase price of which the suit was brought. He told in substance about a meeting being held at Ripley attended by a number of golf enthusiasts, of which meeting he was appointed temporary secretary and treasurer, and he stated that this was the only meeting ever held; that a temporary organization was effected, following which he entered into the negotiations for the purchase of these mowers. He testified positively that nothing was said to him about making any arrangements about a mower, and that it was not even mentioned, but that after he had signed these notes some donations were made by some of the parties to help pay for the same. Being asked how he came to sign these notes, "Ripley Golf Club," he said, "I just gave it that name." Further on in his testimony, he testified positively that he just went ahead and bought the machine on his own responsibility, and that he was not authorized by anyone to buy it, and none of the rest of them had anything to do with it. He testified that no permanent organization was formed and no by-laws or constitution adopted, and that nothing was done except to have a talk about it.

Some of the other defendants likewise testified that they had never authorized the purchase of these mowers, and had given Mr. Radabaugh no authority to sign the notes.

The evidence discloses that a cow pasture was rented and some kind of a golf course established and that a collection was taken up from time to time to pay for the pasture rent, and that they took up a freewill offering of donations from some of the parties to help defray some of the expenses. Evidently all of the negotiations for the sale of the mowers in question were conducted by some representative of the Toro Manufacturing Company with the defendant C. C. Radabaugh, and he evidently took no precautions whatever to determine who were the responsible parties for the purchase of the mowers, and accepted as payment therefor the promissory notes signed in the manner hereinbefore set forth.

No contention is made that the Ripley Golf Club was a corporation; that designation was merely a name bestowed upon the enterprise by the defendant C. C. Radabaugh. The evidence not only failed to establish a partnership between the defendants, but on the other hand, established the fact that there was none. None of the defendants, other than C. C. Radabaugh, in the purported capacity of treasurer of the Ripley Golf Club, signed the notes in question. They specifically denied his authority to bind them in the transaction. The defendants other than C. C. Radabaugh could not be held liable for the purchase price of these mowers, unless they authorized the purchase thereof, or joined in some contract for such purchase, or signed the notes which were given for the purchase price thereof, or authorized someone to sign such notes for them. The evidence wholly failed to prove any of these elements indispensable to the recovery of the plaintiff against any of the defendants except C. C. Radabaugh. The burden of proof was upon him to establish the allegations of his petition; otherwise he could not recover.

At the conclusion of all the evidence in the case, the defendants other than the defendant C. C. Radabaugh demurred thereto, and he separately demurred to the evidence.

The court, thereupon, sustained the demurrers of the several defendants, except C. C. Radabaugh, and overruled his demurrer. No further evidence being offered by the defendant C. C. Radabaugh, the court directed the jury to return a verdict in favor of the other defendants and directed the jury to return a verdict in favor of the plaintiff and against the defendant C. C. Radabaugh, which was done and judgment rendered against him for the amount claimed by the plaintiff.

The plaintiff, thereupon, filed his motion for a new trial, which was overruled, and this appeal was perfected.

The plaintiff in error bases his contention for a reversal of the judgment of the lower court upon the argument that the testimony of the witnesses was conflicting and that it was the duty of the trial court to submit the questions of fact in the case to the jury, and cites the oft-repeated rule laid down by this court that it is error to direct a verdict in a law case where the evidence is conflicting on any material issue of fact presented by the pleadings.

The principal trouble with this contention is that it finds no support in the record. The plaintiff recovered a judgment against the defendant C. C. Radabaugh, who was the one who gave the order for the Fairway Mowers, and signed the notes in the name of "Ripley Golf Club" by him as its treasurer. The Ripley Golf Club was not a legal entity. It was not a corporation. It was not a trust, and there was a total failure to prove that it was a partnership composed of the defendants. The defendant C. C. Radabaugh made himself liable by assuming to purchase these Fairway Mowers from the representative of the Toro Manufacturing Company. He testified positively that he had no authority from the other defendants to purchase them, no authority to sign their names, or to act as their agent in the purchase of these Fairway Mowers, or to bind them for the purchase price thereof. This case simply presents an instance of a transaction being loosely handled by a salesman, who gave little consideration to the question as to who was to pay for the articles sold. No doubt he thought these golf enthusiasts would pay for these Fairway Mowers, but that was not sufficient to create a legal liability upon them to do so.

Instead of the evidence being conflicting, it tended without controversy to establish nonliability on the part of the defendants other than C. C. Radabaugh.

The question is raised by counsel for defendants in error that no recovery could be had upon the first cause of action of the plaintiff for the reason that there was no evidence whatever as to the value of the mowers in question. We find no evidence of value in the record, but deem it unnecessary to discuss that question for the reason that there was a total absence of any authority to bind the defendants other than C. C. Radabaugh for the purchase of these mowers.

The propositions involved in this case are so elementary and the judgment of the court below is so obviously correct that we deem it unnecessary to cite authorities.

The judgment of the court below is affirmed.

The Supreme Court acknowledges the aid of Attorneys P. C. Simons, Carl Kruse, and J. D. Houk in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Simons and approved by Mr. Kruse and Mr. Houk, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, BUSBY, and WELCH, JJ., absent.